**STATE of Missouri,
Plaintiff–Respondent,**

v.

**Ronald L. YANCY,
Defendant–Appellant.**

**No. 54809.**

Missouri Court of Appeals,
Eastern District,
Division Six.

Oct. 10, 1989.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 8, 1989.

Application to Transfer Denied
Dec. 12, 1989.

David C. Hemingway, St. Louis, for defendant-appellant.

William L. Webster, Atty. Gen., Debra M. Miles, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

SIMEONE, Senior Judge.

Defendant-appellant, Ronald L. Yancy, was charged, tried, found guilty by a jury and sentenced for the offenses of robbery in the first degree and armed criminal action. Sections 569.020, 571.015, R.S.Mo. 1986. He was committed to the custody of the Department of Corrections and Human Resources for a period of ten years for the offense of robbery and three years for the offense of armed criminal action to run consecutively. Appellant appeals; we affirm.

In the early morning hours of April 5, 1987 at about 2:30 a.m., Richard K. Adams was on duty attending a Sinclair Service Station in Kirkwood, Missouri. He was the only service station attendant on duty. At that time, Adams saw a man, identified as the appellant, walking off Big Bend onto the station lot. The appellant approached Adams. A conversation took place outside the station. He asked Adams if he had a "gas can." Adams told him he did not. Then appellant asked for a pack of cigarettes. Adams went inside the station and got them. Appellant then went towards a pay phone; but it was being used. The person using the phone left, after which the appellant used it. Then appellant again asked Adams for a gas container. Adams said he didn't have one. Then the appellant made a turn and "punched" Adams in the lower chest. The appellant told Adams to "hand it [money] over." Adams had no money on him. But money was kept in the office of the station. The appellant twisted Adams' arm and pushed him. Adams was struck "at least a half dozen times." In the back office, appellant again told Adams to "hand it over" or he would "hurt me more." So Adams reached into a desk drawer and handed him approximately $200, "the starting money for the next day." At that time appellant had no weapon. The money was in a gray, Boatmen's Bank money bag. Appellant put the bag in the inside of his jacket. Then he told Adams to start "loading up cigarettes." Adams loaded up about sixteen cartons and placed them in a cardboard box. Appellant told Adams not to make any sudden moves. Appellant then got "jumpy" and "checked" Adams' pockets. Appellant found and took Adams' "brown pocket knife." He opened the knife, swung it around and looked outside. As he left the office, he cut the phone line, and "jabbed" or "nicked" Adams in his right hand with the knife. Appellant held the knife to Adams' throat, actually touching him. The two men then went outside to the side of the station—into the men's room. Appellant carried the money and Adams carried the cigarettes. Appellant still had the knife. Appellant closed the door to the men's room, and told Adams not to move until the car "up the street" had gone. At appellant's request the cigarettes were placed on the restroom's floor. At that time, appellant still had the knife. Appellant then left the restroom with the money but not the cigarettes. Adams later heard the voices of two police officers, and came out of the restroom. When Adams came out appellant was there with police officers. The whole episode took some fifteen minutes.

While all these events were transpiring and unbeknown to Adams, Richard Jones, a truck driver, who had been to the station before, was eating at a local restaurant. When he left the restaurant, and as he approached the Sinclair station, he saw a "scuffle going on." He saw two people scuffling inside, and saw the attendant "being grabbed by the throat." He saw the two disappear into the back room. He called the police because he thought there was a robbery. The police came. The police were present when the appellant walked out of the restroom. The police detained him.

Officer Kenneth W. Price, of the Kirkwood Police Department testified that he received a call and was dispatched to the Sinclair Station. When he arrived another officer, Officer Folluo was on the scene talking to appellant. Officer Price found

Adams in the restroom, physically shaken. The cigarettes were on the floor. Adams was taken over to Officer Folluo to identify appellant.

Officer John D. Folluo of the Kirkwood Police Department testified that he received a call to proceed to the Sinclair Station and went immediately to the station. As he stopped near the restroom door, appellant exited and walked towards the patrol car. At that time appellant had a closed pocket knife in his left hand. Officer Folluo asked for the knife and detained appellant. Adams identified appellant. Appellant was searched and the money was found. The appellant was then formally arrested and conveyed to the station.

Appellant testified in his own defense. He testified that he was sorry for his conduct, that he went into the station because he wanted and needed some money for a place to stay for himself and his daughter. He denied using a knife to get any money, and denied that he hit Adams a half dozen times, or "stabbing" Adams in the hand. After he took the knife and cut the telephone cord, he told Adams to get the cigarettes. He testified that at this time he had the knife, and had Adams carry the cigarettes to the restroom. He admitted that his plan was to take cigarettes along with the money.

After certain rebuttal witnesses testified, appellant moved for a judgment of acquittal. The motion was overruled.

The jury was instructed on robbery first degree, robbery second degree, and armed criminal action. The jury found defendant guilty of robbery in the first degree and armed criminal action.

On appeal, appellant contends that the trial court erred (1) in denying his motion for judgment of acquittal as to the charge of robbery in the first degree by using a dangerous weapon because all of the evidence showed that the robbery was complete prior to the time the appellant had a weapon, and (2) in denying his motion for judgment of acquittal as to the count of armed criminal action because the evidence showed that he did not possess a weapon until the robbery had been completed.

Appellant argues that the "forcible taking of the money in this case was entirely accomplished before appellant had the knife in his possession," and therefore he could not be convicted of robbery in the first degree. He also argues that he cannot be convicted of armed criminal action because no weapon was used until "after the appellant had complete possession of the money."

■ Where the sufficiency of the evidence is at issue, this court must review the record in the light most favorable to the judgment and determine whether there is substantial evidence to reasonably support a submissible case. *State v. Turner*, 623 S.W.2d 4, 6 (Mo. banc 1981); *State v. Barrett*, 710 S.W.2d 489, 491 (Mo.App. 1986). Under this standard, and after reviewing the total record, we hold that there was sufficient, substantial evidence to prove both robbery in the first degree and armed criminal action.

Section 569.020, R.S.Mo., 1986 states that a "person commits robbery in the first degree when he forcibly steals property and in the course thereof he, ... (1) causes serious physical injury to any person; or (2) is armed with a deadly weapon; or (3) uses or threatens the immediate use of a dangerous instrument against any person; or (4) displays or threatens the use of what appears to be a deadly weapon or dangerous instrument." Section 571.015, provides that any person who commits any felony with the use, assistance or aid of a deadly weapon is also guilty of the crime of armed criminal action.

Under these provisions of law, and under the facts, the jury could reasonably find appellant guilty of both offenses.

Appellant's argument on appeal is too narrow. Appellant complains that the judgment should be reversed because at the time the robbery of the money was complete, he had no weapon and when the appellant seized the knife from Adams the robbery of the money had taken place.

■ Robbery in the first degree is committed when "in the course" of forcible

stealing, a person is armed with a deadly weapon or uses or threatens the use thereof. "In the course" of forcible stealing is a broad term. It covers the whole transaction or occurrence. The statute does not state that during the actual taking of the property appellant must simultaneously display or threaten the use of a deadly weapon, but only that "in the course thereof" defendant uses or threatens to use a weapon. As long as a weapon is used "in the course" of forcible stealing, the offense is robbery in the first degree. *State v. Burston,* 684 S.W.2d 568, 569 (Mo.App. 1985). While it is true that an accused who has already taken dominion over property by stealth and then uses force or violence, the crime is not robbery, that is not the situation here. If fear or violence precedes or is contemporaneous with the taking, the offense of robbery is complete. *State v. Beatty,* 617 S.W.2d 87, 90 (Mo.App.1981). And if the use of a weapon is a part of the whole, single, transaction, the offense is robbery. *State v. Wilborn,* 525 S.W.2d 87 (Mo.App.1975); *State v. Clemons,* 356 Mo. 514, 202 S.W.2d 75 (1947). It is the use of a weapon "in the course" of forcible stealing, that makes the offense robbery in the first degree. The whole of the affair in the case at bar, lasting some fifteen minutes, constituted a single incident or occurrence, the *res gestae* of the crime, and such a situation is distinguishable from one in which there had been a taking and subsequent thereto a person is put in fear, or violence is used.

*State v. Wilborn, supra,* 525 S.W.2d 87, discusses the distinction and cites cases from this and other jurisdictions. There, a service station was robbed. The proprietor was servicing an automobile when an automobile with the appellant and others entered. The proprietor saw a man ransacking the money drawer and his pockets were bulging with money. When the proprietor entered the room, appellant picked up a pair of garden shears and "stuck" them in his neck. The appellant and his companion fled. In *Wilborn,* appellant contended that the evidence was insufficient to show robbery in the first degree by means of a deadly weapon. Appellant argued that

possession of the money had already taken place so that the conviction should not stand. This court affirmed the conviction, and held the force was contemporaneous with the taking and part of a single transaction.

Taking the evidence most favorably to the state in the case at bar, it shows that the appellant entered the station because he wanted some money and his plan was to take cigarettes along with the money. The evidence shows that after Adams handed over the bag of money to appellant, appellant had the knife when, at the request of appellant, Adams carried the box of sixteen cartons of cigarettes to the men's restroom. The "robbery" was not terminated at the time the money was handed to appellant by Adams, but continued when, knife in hand, appellant ordered Adams to carry the sixteen cartons of cigarettes to the men's restroom. The robbery was a continuing one. The project was continued with the use of the knife.

The evidence shows that the appellant ordered Adams to "hand it over," that after threats and punches (fear and violence), Adams gave appellant the bag of money, then appellant told Adams to load up cigarettes which he did. The appellant, after seizing the knife from Adams, and "jabbing him" was told to carry the cigarettes to the restroom. At that time appellant had the knife, he was using it not only to retain and control the bag of money, but to further the robbery of the sixteen cartons of cigarettes. At the time he had the knife, the cigarettes were under his dominion and control although being carried by Adams to the restroom. Viewing the "robbery" as a total occurrence as the jury had a right to do, and not simply the handing over the money, as an isolated occurrence, it is clear that appellant used a deadly weapon "in the course" of forcible stealing. The totality, and not the piecemeal, of the transaction or occurrence must be viewed to determine the issue. When so viewed, there was sufficient evidence to show the offense of robbery in the first degree.

The evidence is also sufficient to support the charge and conviction of armed crimi-

nal action. A felony was committed with the use or aid of a weapon.

The judgment is affirmed.

GRIMM, P.J. and HAMILTON, J., concur.