**STATE of Missouri, Respondent,**

v.

**Stephen C. GRAY, Appellant.**

**No. 19433.**

Missouri Court of Appeals, Southern District, Division One.

March 1, 1995.

Motion for Rehearing or Transfer to Supreme Court Denied March 23, 1995.

Application to Transfer Denied April 25, 1995.

Gary E. Brotherton, Office of the State Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Fernando Bermudez, Asst. Atty. Gen., Jefferson City, for respondent.

MONTGOMERY, Judge.

In a bench-tried case, the trial court found Appellant Stephen C. Gray guilty of eight felonies and assessed punishment, with the sentences to be served consecutively, as follows:

Count I: Aggravated forcible rape of Daughter,[1] § 566.030, RSMo Supp. 1991;[2] life imprisonment.

Count II: Aggravated forcible sodomy of Daughter, § 566.060, RSMo Supp.1991; life imprisonment.

Count III: Aggravated forcible sodomy of Mother, § 566.060, RSMo Supp.1991; 30 years' imprisonment.

Count V: Armed criminal action, § 571.015; 30 years' imprisonment.

Count VI: First degree burglary, § 569.160; 15 years' imprisonment.

Count VII: Attempted first degree robbery of Daughter, § 564.011; 15 years' imprisonment.

Count VIII: First degree assault of Daughter, § 565.050; 15 years' imprisonment.

Count IX: Felonious restraint of Mother, § 565.120; 7 years' imprisonment.

Appellant's sole point relied on is:

The trial court erred in overruling Appellant's motions for judgment of acquittal filed at the close of the State's evidence and at the close of all the evidence and in sentencing Appellant upon his convictions for the aggravated forcible rape of [Daughter], the aggravated forcible sodomy of [Daughter] and the aggravated forcible sodomy of [Mother], because such rulings

---

1. Because of the nature of the crimes, we refer to the victims as "Mother" and "Daughter."

2. References to statutes are to RSMo 1986 unless otherwise indicated.

violated Appellant's right to due process of law, as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Missouri Constitution, in that the State failed to produce sufficient evidence from which a rational trier of fact could have found that "in the course of such offense[s, Appellant] displayed a dangerous instrument in a threatening manner" since the State's evidence showed that [Mother] grabbed the knife and threw it aside well before these alleged offenses.

Appellant argues that the State did not present sufficient evidence that he "displayed a dangerous instrument in a threatening manner" during his forcible rape and forcible sodomy of Daughter and forcible sodomy of Mother.

▆▆▆ According to Rule 27.01(b) the trial court's findings have the force and effect of a jury verdict. Therefore, we review this case as if a jury had returned verdicts of guilty. *State v. Wilson,* 846 S.W.2d 796, 797 (Mo. App.1993). When an appellant challenges the sufficiency of the evidence, this Court will view all facts and reasonable inferences in the light most favorable to the guilty verdict. *State v. Dulany,* 781 S.W.2d 52, 55 (Mo.banc 1989). Contrary evidence and inferences are disregarded. *Id.* This Court should affirm the conviction if the State produced sufficient evidence from which a reasonable trier of fact might find Appellant guilty beyond a reasonable doubt. *Id.*

Rape and sodomy are unclassified felonies punishable by life imprisonment or a term of years not less than five years. §§ 566.030; 566.060, RSMo Supp.1991. However, if the actor "in the course [of the crime] ... displays a deadly weapon or dangerous instrument in a threatening manner," rape and sodomy are class A felonies punishable by ten years to life imprisonment. *Id.;* § 558.011. Appellant acknowledges that the State introduced sufficient evidence to support the convictions for unclassified rape and sodomy. Appellant argues that the State failed to prove the "aggravating element" of displaying a dangerous instrument. Specifically, he argues that the knife was not displayed "in the course of" the crimes.

The evidence favorable to the verdicts follows:

On September 9, 1992, Mother and her 15–year–old daughter were asleep in their home. Daughter awoke to find Appellant's hand over her mouth and a knife at her throat. Appellant applied enough pressure to the knife that it left marks on her neck. Appellant demanded money and asked whether Daughter was alone in the house. Daughter responded that her mother was in the next room. Appellant forced Daughter into her mother's room where Daughter declared, "Mom, he's got a knife." Appellant displayed the knife to Mother and again demanded money. Mother reached up and grabbed the knife throwing it behind her. Appellant beat Mother in the face and back of the neck. He bound her wrists and ankles with a telephone cord. Appellant then left the room with Daughter and said he was going downstairs.

Mother escaped from the telephone cord and went into the hallway. Appellant was in the hallway and again beat her in the face. He proceeded to put Mother in a headlock and twist her neck. He continued to beat her on the back of the neck. He took Mother back into the bedroom and tied her up with bed sheets and left the room with Daughter. Again, Mother wiggled loose and went into the hallway. She again encountered Appellant who punched her in the face and dragged her into Daughter's bedroom. Appellant handcuffed Mother to the bedpost and took Daughter out into the hallway.

In the hallway, Appellant forced his penis into Daughter's mouth. He pushed her against the wall and threatened to throw her down the stairs. He pushed her over a bed in the hallway and inserted his penis into her vagina. During this incident Appellant beat Daughter. Appellant then took Daughter into the bedroom and forced Mother to perform oral sex. Again, Appellant left the room with Daughter. Mother freed herself from the handcuffs and this time escaped the house. Appellant soon realized that Mother had escaped. He left the house.

West Plains police officers investigated the incident and arrested Appellant. After being

advised of his *Miranda* [3] rights, Appellant admitted his actions. Appellant led police officers to a tee shirt that he had discarded after committing the crimes. Appellant's blood was found on Daughter's sweatshirt. The police officers found a hat at the victims' home that Appellant identified as his. Appellant also gave a written and videotaped confession.

The State nor Appellant directs our attention to any Missouri case that explains the "in the course of" language found in the rape and sodomy statutes. In fact, Appellant cites us no case in support of his argument and we have found none. Several Missouri cases discuss the identical "in the course of" language in the robbery context. First degree robbery is "forcibly steal[ing] property and in the course thereof, ... display[ing] or threaten[ing] the use of what appears to be a deadly weapon or dangerous instrument." § 569.020.

In *State v. Beatty*, 617 S.W.2d 87, 90 (Mo. App.1981), the court held that if fear or violence precedes or is contemporaneous with the taking, the offense of robbery is complete. And if the use of a weapon is part of the whole single transaction, the offense is first degree robbery. *State v. Wilborn*, 525 S.W.2d 87, 90–93 (Mo.App.1975).

A case expounding on the views in *Beatty* and *Wilborn* is *State v. Yancy*, 779 S.W.2d 712 (Mo.App.1989). There, the defendant stole $200 from a desk drawer in a service station. At the time he took the money the defendant had no weapon. The defendant then searched the service station attendant's pockets. The defendant found and took the attendant's pocket knife. The defendant opened the knife, swung it around, and nicked the attendant's hand with the knife. The defendant held the knife to the attendant's throat. On appeal, the defendant complained that his first degree robbery conviction should be reversed because at the time of the robbery he had no weapon. He argued that when the defendant seized the knife from the attendant, the robbery of the

money had already taken place, so the knife was not displayed "in the course thereof."

The *Yancy* court held:

"In the course" of forcible stealing is a broad term. It covers the whole transaction or occurrence. The statute does not state that during the actual taking of the property appellant must simultaneously display or threaten the use of a deadly weapon, but only that "in the course thereof" defendant uses or threatens to use a weapon. As long as a weapon is used "in the course" of forcible stealing, the offense is robbery in the first degree.

*Id.* at 715.

In *State v. LaRue*, 811 S.W.2d 40 (Mo.App. 1991), another robbery case, the force employed by the defendant's accomplice did not occur simultaneously with the victim's surrender of her money. Prior to taking the money, the accomplice struck the victim with a hammer. The court found that the jury could have reasonably found that later there was an implicit threat of further physical force unless the victim handed over her money. At that point, so far as the victim knew, the accomplice still had the hammer. The *LaRue* court held that "[i]f the culprit uses or threatens the immediate use of a dangerous instrument 'in the course' of forcible stealing, the offense is robbery in the first degree." *Id.* at 44.

■ This Court finds that the reasoning in *Yancy* and *LaRue* applies to the present case. Like aggravated rape and aggravated sodomy, robbery in the first degree is committed when "in the course of" the criminal act, a person is armed with a deadly weapon or uses or threatens the use thereof. Like the robbery statute, the rape and sodomy statutes do not require that the commission of the crimes be simultaneous to the display of "a dangerous instrument." Under the facts of this case, the use of a knife was part of the whole single transaction which constituted the aggravated form of sodomy and rape.

After Appellant awakened Daughter with a knife to her throat, he dragged her into Mother's room where he displayed the knife

---

**3.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct.    1602, 16 L.Ed.2d 694 (1966).

to Mother. Daughter testified that after Mother knocked the knife out of Appellant's hand "the man looked for his knife, saying that he was going to finish me." Daughter testified that she was concerned that Appellant still had the knife with him at the time of the rape and sodomies. She testified that, in fact, she assumed that he still had the knife.

Appellant placed the victims in a state of fear by using the knife to wake them. The whole of the affair, lasting approximately one hour and 45 minutes, constituted a single incident or occurrence. Appellant used the knife to frighten and maintain control of the victims. It is clear that Appellant used a deadly weapon in a threatening manner "in the course of" the rape and sodomies. The totality, and not the piecemeal, of the transaction or occurrence must be viewed to determine the issue. *Yancy*, 779 S.W.2d at 715.

 We hold that the State produced sufficient evidence from which a trier of fact might find Appellant guilty beyond a reasonable doubt of aggravated rape and aggravated sodomy of the victims. When a deadly weapon is displayed in a threatening manner "in the course of" a single transaction of forcible rape or sodomy, such as here, the offense is aggravated rape or aggravated sodomy.

The judgment is affirmed.

SHRUM, C.J., and FLANIGAN, J., concur.