**STATE of Missouri, Respondent,**

v.

**Ray KELLY, Appellant.**

**No. WD 57705.**

Missouri Court of Appeals,
Western District.

Jan. 30, 2001.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 27, 2001.

Application to Transfer Denied
May 29, 2001.

Susan L. Hogan, Appellate Defender, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Susan K. Glass, Asst. Atty. Gen., Jefferson City, for respondent.

Before SMART, Presiding Judge, ELLIS, Judge and LAURA DENVIR STITH, Judge.

ELLIS, Judge.

Ray Kelly was charged with four counts of robbery in the first degree, § 569.020,[1]

and four counts of armed criminal action, § 571.015, based on four offenses committed on July 21, July 31, and August 1, 1995. Prior to trial, Mr. Kelly filed a motion to sever seeking a separate trial on the charges arising from each offense. The trial court denied the motion and the cause proceeded to trial. Mr. Kelly was convicted on all eight counts. Mr. Kelly appealed his convictions claiming that the two counts arising from the July 21, 1995 offense should have been severed from the remaining six counts. *State v. Kelly*, 956 S.W.2d 922, 923 (Mo.App. W.D.1997). We found that the offenses had been improperly joined, therefore, we reversed and remanded Mr. Kelly's convictions for a new trial on Counts I and II separate from Counts III through VIII. *Id.* at 926.

Prior to the new trial, Mr. Kelly again filed a motion to sever, seeking a separate trial as to each remaining robbery charge and its accompanying armed criminal action charge. The trial court granted Mr. Kelly's motion as to Counts III and IV but denied the motion as to the remaining offenses, Counts V through VIII.[2] Thus, the case proceeded to trial on two counts of robbery in the first degree and two counts of armed criminal action arising out of offenses committed on July 31 and August 1, 1995.

Viewed in the light most favorable to the verdict, the evidence revealed the following. On July 31, 1995, James Winnie, David Allen, and Ken High were working at a 7–11 convenience store at 106th and Blue Ridge in Jackson County, Missouri. At approximately 4:15 a.m., two men entered the convenience store carrying guns.

One man was carrying a handgun and he had his face painted red and blue. The other man carried a sawed off shotgun and was wearing a baseball cap with a veil hanging off it to cover his face. The men attempted to open the cash register after ordering the three store employees to lie on the floor. Because they could not get the cash register open, they ordered Mr. Allen to open it. The men took the money from the cash register, took some Newport cigarettes, and ran from the store. The men drove away in a small red compact car.

The next day, at approximately 1:30 p.m. on August 1, 1995, two men entered The Half Price Store located at 8760 Blue Ridge Boulevard in Jackson County, Missouri. They went to the men's department and began quickly taking clothes off the racks without looking at the size, price, or style. The older of the two men, identified as Mr. Kelly on the store surveillance video and at trial, put his pile of clothes down, walked out of the store, got into an old red Honda Civic, and drove the car to a parking spot at the front of the store. Mr. Kelly entered the store again, picked up his pile of clothes, then he and the other man began walking towards the front door of the store.

Amy Fischer Smith was working as a loss prevention agent in The Half Price Store that afternoon and she and another employee tried to stop the men from leaving the store with the merchandise. Mr. Kelly dropped his pile of clothes and started running. Ms. Smith ran outside to the red Honda Civic in an attempt to lock the men out of their car. As she tried to open the car door, Mr. Kelly came up behind

1. All statutory references are to RSMo (1994) unless otherwise indicated.

2. For purposes of the new trial in April 1999, the Counts V through VIII against Mr. Kelly were renumbered Counts I through IV. Counts I and III were charges of robbery in the first degree, Counts II and IV were charges of armed criminal action.

her and pointed a .9 millimeter handgun in her face. Ms. Smith backed away when she saw the gun, but Mr. Kelly kept walking toward her as she backed off. The other man approached Mr. Kelly and they both took off running.

On November 17, 1995, Mr. Allen viewed a photographic lineup and identified Mr. Kelly as the man carrying the handgun during the 7-11 robbery. A fingerprint lifted from inside the front door of the 7-11 store was determined to match Mr. Kelly's left ring finger. Mr. Kelly admitted, in an interview, that he stole clothing from the Half Price Store on August 1, 1995, but he denied having a gun or participating in the 7-11 robbery. At trial, Ms. Smith identified Mr. Kelly as the man who put a gun in her face in the parking lot of the Half Price Store. Mr. Allen identified Mr. Kelly as the man wearing red and blue face paint and carrying a handgun in the 7-11 robbery. Officer Bruce Solomon immediately recognized Mr. Kelly as one of the men rapidly gathering clothes at The Half Price Store after viewing the surveillance video of the incident.

After the State presented its evidence, Mr. Kelly moved for a judgment of acquittal at the close of the State's case. The trial court overruled this motion and, without presenting any evidence on his own behalf, Mr. Kelly immediately moved for a judgment of acquittal at the close of all the evidence. This motion was also overruled and a jury found Mr. Kelly guilty of all four charges against him. The Court sentenced him to fifteen years in prison on Count I, first degree robbery, and six years in prison on Count II, armed criminal action, the two sentences to be served concurrently. As to Counts III and IV, Mr. Kelly was sentenced to ten years in prison for Count III, first degree robbery, and three years on Count IV, armed crimi-

nal action, with these sentences to likewise run concurrently. But the court ordered that the sentences on Counts I and II run consecutive to the sentences for Counts III and IV. Mr. Kelly appeals.

Mr. Kelly presents two points on appeal. In Point I, he argues the trial court erred in joining Counts I and II with Counts III and IV, and abused its discretion in overruling his motion to sever Counts I and II from Counts III and IV. In Point II, Mr. Kelly asserts the trial court erred in overruling his motions for judgment of acquittal at the close of the State's case and at the close of all the evidence, and in accepting the guilty verdicts on Counts III and IV, involving the incident at the Half Price Store. He contends the state's evidence did not prove essential elements of the crimes charged, in particular that he used force or a weapon in the course of taking property from the store.

As a preliminary matter, we take up the State's argument that Mr. Kelly's claim in his Point I that the trial court erred in failing to sever Counts I and II from Counts III and IV is precluded by the law of the case. As noted, *supra*, Mr. Kelly was originally charged in eight counts, all of which were joined for trial. Prior to his first trial, Mr. Kelly filed a motion to sever Counts I and II from Counts III through VIII. The trial court overruled Mr. Kelly's motion and he was tried and found guilty on all eight counts as charged. On appeal to this court, Mr. Kelly raised only one point of error, that the trial court abused its discretion in refusing to sever Counts I and II from the other six counts. *Kelly*, 956 S.W.2d at 925. And in that appeal, we agreed with Mr. Kelly's argument, finding that joinder of Counts I and II with the other six counts was improper, and the trial court erred in failing to sever those two counts from the other six. "We therefore reverse[d] and remand[ed] for a trial

on Counts 1 and 2 separate from Counts 3 through 8." *Id.* at 926.

The law of the case doctrine provides that the previous holding in a case constitutes the law of that case and precludes re-litigation of the same issue in a subsequent appeal. *State v. Graham,* 13 S.W.3d 290, 293 (Mo. banc 2000)(*quoting Rodriguez v. Suzuki Motor Corp.,* 996 S.W.2d 47, 61 (Mo. banc 1999)). The doctrine not only precludes re-litigation of claims that were actually raised in a prior appeal, but also any claims that arose prior to the first adjudication and might have been raised but were not. *Id.* (*quoting Shahan v. Shahan,* 988 S.W.2d 529, 533 (Mo. banc 1999)). Pursuant to this doctrine, the failure to raise a claim in a prior appeal means that the court hearing a subsequent appeal need not consider the claim. *State v. Johnson,* 22 S.W.3d 183, 189 (Mo. banc 2000). But appellate courts do have discretion to consider an issue where there is a mistake, a manifest injustice or an intervening change in the law. *Id.*

In his prior appeal, Mr. Kelly complained only of the trial court's failure to sever Counts I and II from the other six counts. We addressed the issue, found his argument persuasive, and reversed his convictions with directions that he be tried separately on Counts I and II. *Kelly,* 956 S.W.2d at 926. We granted him all the relief he requested. He could have moved to sever each robbery count and its related armed criminal action charge from the others in the trial court originally, and he could have appealed any denial of such a motion in his original appeal to this court. He did neither. There has been no mistake, manifest injustice or intervening change in the law. Indeed, Mr. Kelly makes no such argument. Rather, he merely asserts that the trial court erred in denying his motion to sever the other counts after reversal and remand. By the law of the case, Mr. Kelly's claim is controlled by his failure to raise the issue in the trial court before his original trial and by our decision in his previous appeal. *Johnson,* 22 S.W.3d at 189. Accordingly, we decline to review Mr. Kelly's first point.

In his second point on appeal, Mr. Kelly claims that the trial court erred in overruling his motions for judgment of acquittal and in convicting him of robbery in the first degree and armed criminal action in connection with The Half Price Store incident. In making this claim, he argues that the evidence was insufficient to support his convictions in that the evidence adduced by the State at trial did not establish that he had used force or a weapon against Amy Fischer Smith in the course of taking property but showed only that force or a weapon was used after he had dropped the property and no longer had control over it.

When reviewing the sufficiency of the evidence to support a criminal conviction, an appellate court should not act as a super juror with veto powers, but should give great deference to the trier of fact. *State v. Grim,* 854 S.W.2d 403, 414 (Mo. banc 1993). Appellate review is limited to a determination of whether there is sufficient evidence from which a reasonable juror could find the defendant guilty beyond a reasonable doubt. *State v. Clay,* 975 S.W.2d 121, 139 (Mo. banc 1998)(*quoting State v. Dulany,* 781 S.W.2d 52, 55 (Mo. banc 1989)). In reviewing Mr. Kelly's claim that there was insufficient evidence to sustain his convictions for robbery in the first degree and armed criminal action, this court should accept as true all of the evidence favorable to the State, including all favorable inferences drawn therefrom, and disregard all contrary evidence and inferences. *Id.* (*quoting Dulany,* 781 S.W.2d at 55).

As applicable to the case at bar, "[a] person commits the crime of robbery in the first degree when he *forcibly steals* property and in the course thereof he, or another participant in the crime, . . . (2)[i]s armed with a deadly weapon." *§ 569.020* (emphasis added). "[A] person 'forcibly steals', and thereby commits robbery, when, in the course of stealing, as defined in section 570.030, RSMo, he uses or threatens the immediate use of physical force upon another person for the purpose of: (a) Preventing or overcoming resistance to the taking of the property or to the retention thereof after the taking. . . ." *§ 569.010(1)*. And finally, "[a] person commits the crime of stealing if he appropriates property or services of another with the purpose to deprive him thereof, either without his consent or by means of deceit or coercion." *§ 570.030.1*.

To sustain a conviction for robbery in the first degree in this case, it was incumbent upon the State to prove that Mr. Kelly forcibly stole property and that, in the course thereof, he was armed with a deadly weapon. *§ 569.020.1; State v. Rogers*, 959 S.W.2d 467, 468 (Mo.App.E.D. 1997). In order to prove that he "forcibly stole property," it was necessary for the State to prove that Mr. Kelly (1) appropriated property owned by another, (2) without the owner's consent, (3) with the purpose to deprive the owner of the property, (4) in the course thereof, he used or threatened the immediate use of physical force upon Amy Fischer Smith, (5) for the purpose of preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking. *§ 569.010; State v. Boyle*, 970 S.W.2d 835, 838 (Mo.App. E.D.1998).

■ Mr. Kelly claims that the evidence was insufficient to establish that he was guilty of robbery in the first degree because it did not establish that he had used force or violence to take property from The Half Price Store. He further argues that this evidence at most showed him to be guilty of only stealing because a gun was never displayed in the store while he was gathering up the clothing nor while he was attempting to make his getaway with the pile of clothes. Rather, he asserts the evidence only established that by the time he pulled out the gun, the taking was over and he had abandoned his attempt at carrying the clothes away. Accordingly, he argues that the State failed to prove that he used or threatened the use of force to prevent or overcome resistance *"to the taking* of the property or to the *retention thereof immediately after the taking."* *§ 569.010(1)(a)* (emphasis added).

■ Here, the evidence established the elements of stealing. Mr. Kelly appropriated the clothes, which were owned by The Half Price Store. He took the clothes out of the building without paying for them and therefore a reasonable inference can be drawn that he intended to deprive the owner of the clothes. The evidence established that he did not have permission to take the clothes.

But the distinguishing characteristic between robbery and stealing is that the former involves the use of force or the threat of force to accomplish the stealing. *State v. Hayes*, 518 S.W.2d 40, 45 (Mo. banc 1975); *State v. Cyprian*, 864 S.W.2d 10, 11 (Mo.App. E.D.1993). Thus, as noted *supra*, robbery requires forcible stealing and by statutory definition, this required the State to prove that Mr. Kelly used force or the threat thereof for the purpose of "preventing or overcoming resistance to the *taking of the property* or to the *retention thereof immediately after the taking."* *§ 569.010(1)(a)* (emphasis added).

There is no evidence whatsoever that Mr. Kelly or his accomplice used any kind of force in the taking of the property.

Rather, the record reveals that they each gathered a pile of clothes, and then started walking out the door with them without paying for them. Ms. Smith confronted the two men as they were leaving the store with the clothes and, as a result, just outside the store, they dropped the clothes and ran. Here again, the record is devoid of any evidence that Mr. Kelly or his partner used any force or threatened the use thereof at the time of confrontation. Rather, it is clear they dropped the clothes and ran. They used no force nor did they threaten the use of force in order to *retain the property*. They simply left the clothes and tried to make their escape. At this point, the taking was over, and Mr. Kelly and his partner had abandoned their attempt to retain the property. The record is clear that, as of that time, no force or threat of force was used.

It is only after these events that the record reveals the use of force. After Ms. Smith confronted the men and they dropped the clothes, they ran in the opposite direction of where Mr. Kelly had parked the car. As they were running away, Ms. Smith ran to Mr. Kelly's car with the idea of locking the doors to prevent it from being used to escape. She was trying to open the door so she could roll the window up but experienced difficulty in doing so because the door panel was apparently missing. As she was trying to get the door open, she heard footsteps behind her and turned to look. She saw Mr. Kelly approaching, and he then pointed a gun in her face. She started backing away, and he continued to approach her until the other man ran up to Mr. Kelly and said "come on, let's go," at which time they both turned and ran directly away from where Ms. Smith was standing.

■ The rule in Missouri has traditionally been that the force, violence or intimi-dation necessary to prove robbery must precede or be contemporaneous with the taking of the property. *State v. Vandament*, 299 S.W.2d 532, 535 (Mo.1957); *State v. Holmes*, 317 Mo. 9, 295 S.W. 71, 73 (1927); *State v. Parker*, 262 Mo. 169, 170 S.W. 1121, 1123 (1914); *State v. Yancy*, 779 S.W.2d 712, 715 (Mo.App. E.D.1989); *State v. Samuel*, 562 S.W.2d 733, 736 (Mo. App. W.D.1978). Thus:

> It is well settled that where the state's evidence shows that the accused had obtained physical possession of the property by stealth and that force and violence or putting in fear was used only as a means of escape, or where the evidence fails to show that possession of the property was obtained by force or violence or putting in fear, the crime is not robbery.

*Vandament*, 299 S.W.2d at 534. The only change with respect to this rule came with the adoption of our current criminal code in 1977, effective January 1, 1979. In the new code, the crime of robbery, both first and second degree, as codified in § 569.020 and § 569.030, required a forcible stealing as defined in § 569.010. The definition of "forcibly steals" extended the time at which the use of force or the threat thereof may occur to include efforts to overcome resistance to "retention [of the property] *immediately after the taking*." § 569.010(1)(a) (emphasis added). Thus, the force, violence or intimidation can now occur after the taking but it must still be "in the course of stealing" in that it occurs immediately after the taking in an effort to overcome resistance to retention of the property. In other words, the force being used immediately after the taking to thwart attempts to prevent retention of the property is part of a whole, single transaction. *See Yancy*, 779 S.W.2d at 715.

In this case, as explained *supra,* force was used only after the taking was over, and Mr. Kelly and his partner had dropped the clothes and abandoned any attempt to retain possession of them. The use of force did not precede the taking, was not contemporaneous with the taking and was not immediately after the taking *for the purpose of overcoming resistance to the retention of the property.*[3]

 "The State has the burden, and must prove, each and every element of a criminal offense, and if it fails to do so, any conviction obtained must be reversed." *State v. Moriarty,* 914 S.W.2d 416, 422 (Mo.App. W.D.1996). Forcible stealing is an essential element of the crime of robbery in the first degree. *See State v. Tivis,* 884 S.W.2d 28, 29–30 (Mo.App. W.D. 1994). It was, therefore, incumbent upon the State to prove that Mr. Kelly forcibly stole the property as defined in § 569.010. It failed to do so. Accordingly, Mr. Kelly's conviction and sentence on Count III, the charge of first degree robbery of The Half

Price Store on August 1, 1995, must be reversed.

Count IV, charging armed criminal action in the alleged robbery of The Half Price Store on August 1, 1995, required a finding of all the essential elements of the underlying robbery offense. *§ 571.015; Jones v. State,* 720 S.W.2d 756, 757 (Mo. App. E.D.1986); *State v. Krause,* 682 S.W.2d 55, 56 (Mo.App. E.D.1984). As a result, Mr. Kelly's conviction and sentence on Count IV also must be reversed.

Although not raised by the parties, the question remains whether the case can be remanded for further proceedings. In *State v. O'Brien,* 857 S.W.2d 212 (Mo. banc 1993), our Supreme Court held that a case may be remanded for retrial on a lesser included offense when a conviction is reversed for insufficient evidence. *Id.* at 221. In *State v. Tivis* and *State v. Carter,* 967 S.W.2d 308 (Mo.App. E.D.1998), the appellate courts, relying on *O'Brien,* reversed the second degree robbery convictions, but remanded the cases for potential retrial for felony stealing. *Tivis,* 884

---

**3.** While not cited by the State, for the sake of thoroughness, we would note that the facts here are distinguishable from those in *State v. Maynard,* 954 S.W.2d 687 (Mo.App. W.D. 1997) and *State v. Cates,* 854 S.W.2d 17 (Mo. App. W.D.1993). In *Maynard,* the defendant left a J.C. Penney store with two pair of jeans rolled up and stuffed in the back of his pants. *Id.* at 688. A security officer confronted him in the parking lot and tried to stop him. *Id.* at 688–89. The defendant pushed the security officer against a car and then knocked him to the ground. *Id.* at 689. The defendant then ran away and while running, pulled the jeans from his pants and threw them down in the parking lot. *Id.* We affirmed his conviction for robbery in the second degree. *Id.* at 690. We did so because the defendant used physical force while the property was still in his possession for the purpose of overcoming resistance to his retention of the property, even though he later disposed of the property while fleeing. *Id.* Similarly, in *Cates,* a K Mart security officer observed the defendant

stuff a pair of shoes and some fishing line in his jacket and leave the store without paying for it. *Cates,* 854 S.W.2d at 18. When the security officer confronted the defendant, he refused to cooperate and, in the process, pushed and shoved the officer to the ground. *Id.* They continued to struggle and the defendant then fled. *Id.* A short time later he was found with the fishing line inside his shirt, and the pair of shoes was found where he had thrown them beneath a dumpster. *Id.* As in *Maynard,* his robbery conviction was affirmed because he used force while still in possession of the stolen property to overcome resistance to his retention of the property, although we phrased it more in terms of him still being in the process of taking the property away. *Id.* at 19. In both cases, the distinguishing characteristic is that force was used while the defendant was still in possession of the property and was used for the purpose of overcoming resistance to retention of the stolen property.

S.W.2d at 32; *Carter*, 967 S.W.2d at 309. *Tivis* and *Carter* were both reversed because the State's evidence was insufficient to establish the use or threatened use of immediate force necessary to support the robbery convictions. *Tivis*, 884 S.W.2d at 30; *Carter*, 967 S.W.2d at 309. The same rationale applies to the case *sub judice*, and therefore, we remand Count III to the trial court for potential prosecution on a lesser included offense.

Mr. Kelly's convictions and sentences on Count III for first degree robbery of The Half Price Store on August 1, 1995, and on Count IV for armed criminal action in the alleged robbery at The Half Price Store on August 1, 1995, are reversed, and Count III is remanded to the trial court for further proceedings not inconsistent with this opinion. The judgments of conviction and sentences imposed on Counts I and II are affirmed.

All concur.