Philip M. Hess, Judge
Introduction *500 Robert Whittaker appeals from the judgment of convictions of first-degree robbery and armed criminal action arising out of an incident in which Whittaker used a knife when confronted while stealing a lawn mower. Whittaker waived his right to a jury trial, and after a bench trial, the court found Whittaker guilty on both counts. Specifically, the court found the knife was used to overcome or prevent resistance to the taking or keeping of the lawn mower. The court sentenced Whittaker to concurrent terms of imprisonment totaling fifteen years. The judgment also found Whittaker a prior and persistent offender. Whittaker raises two points on appeal, arguing the trial court erred in entering judgment against him because: 1) there was insufficient evidence as a matter of law to prove he forcibly stole the lawn mower and used a dangerous instrument in the course thereof; and 2) no prior and persistent offender finding was made at trial so the case must be remanded so the clerical error in the judgment and sentence finding him a prior and persistent offender can be removed. We correct the judgment and sentence to delete the prior and persistent offender finding and affirm as modified.
Facts
On August 1, 2015, after cutting grass at a property on North Broadway in the City of St. Louis, A.M. ("Victim") put his lawn mower in the bed of his pickup truck and used a bungee cord to secure it inside the bed. Victim and his girlfriend then went to the store across the street. While inside, the store clerk saw someone tampering with Victim's truck. The clerk alerted Victim and he went outside and found Whittaker had removed the lawn mower from the bed of the truck to the ground. Victim confronted Whittaker and moved towards him, and Whittaker went around the truck but came back towards Victim with a knife in his hand. Whittaker slashed the knife at Victim with one hand and grabbed at him with the other. Whittaker told Victim to get back or he would cut him. Victim moved back to avoid the knife, but Whittaker scratched him with his fingernail while grabbing at him. Victim warned Whittaker he would defend himself if Whittaker kept coming at him.
By this point, Victim's girlfriend, the store clerk, and two other patrons had come out of the store. Whittaker was informed the police had been called. Whittaker came at the store clerk and other patrons with his knife, but Victim got between them. Whittaker then fled on foot and the police found him a few blocks away.
A grand jury charged Whittaker by indictment, as a prior and persistent offender, with two counts: 1) first-degree robbery, a class A felony, and 2) armed criminal action, an unclassified felony. The indictment pled facts warranting a finding that Whittaker was a prior offender, but did not plead facts warranting a finding that Whittaker was a persistent offender. Whittaker waived his right to a jury trial. At the bench trial, Whittaker admitted to having been found guilty of multiple felonies committed at different times prior to these charges, but the court never made findings of fact that Whittaker was a prior and persistent offender. The court found Whittaker guilty on both charges, and sentenced Whittaker to concurrent terms of imprisonment totaling fifteen years. While the court never made findings on the record at trial or *501 during sentencing that Whittaker was a prior and persistent offender, the judgment found Whittaker a prior and persistent offender. This appeal follows.
Standard of Review
On direct appeal, we review for prejudice, not mere error, and will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial. State v. Morrow , 968 S.W.2d 100, 106 (Mo. banc 1998). We review the facts in the light most favorable to the verdict. Id. Issues not properly preserved for appeal may be considered only if the court finds that manifest injustice or a miscarriage of justice has resulted therefrom. Id.
We review the sufficiency of the evidence in a bench trial of a criminal case to determine whether the State presented sufficient evidence from which the trier of fact could have reasonably found the defendant guilty. State v. Allen , 508 S.W.3d 181, 186 (Mo. App. E.D. 2017). This is not an assessment of whether the court believes the evidence at trial established guilt beyond a reasonable doubt, but a question of whether, in light of the evidence most favorable to the State, any rational fact-finder could have found the essential elements of the crime beyond a reasonable doubt. State v. Nash , 339 S.W.3d 500, 509 (Mo. banc 2011). All evidence favorable to the State and reasonable inferences drawn therefrom are accepted as true, and all evidence and inferences to the contrary are disregarded. Id. Great deference is allotted to the trier of fact and we will not reweigh the evidence. Id.
I. Sufficiency of the Evidence
In point I, Whittaker argues the trial court erred in entering judgment against him because there was insufficient evidence as a matter of law to prove he forcibly stole the lawn mower and used a dangerous instrument in the course thereof. Specifically, Whittaker contends the State failed to produce sufficient evidence showing he appropriated the lawn mower, and used or threatened force to prevent or overcome resistance to his taking the lawn mower or for retaining it. On the appropriation, Whittaker asserts he never had possession, power, or control over the lawn mower because it was always attached to Victim's truck via a bungee cord. Regarding his argument related to using force, Whittaker argues he did not use or threaten force until after he had given up on stealing the lawn mower. Whittaker argues State v. Kelly , 43 S.W.3d 343 (Mo. App. W.D. 2001), is directly on point, and that like in Kelly , the evidence supports that at most he committed the crime of stealing, not robbery. The State argues Kelly is distinguishable and there was sufficient evidence produced to allow the trial court to draw the reasonable inference Whittaker appropriated the lawn mower and used a dangerous instrument while doing so, thereby supporting the robbery conviction. Given our standard of review, we agree with the State.
A person commits first-degree robbery "when he forcibly steals property and in the course thereof he ... [i]s armed with a deadly weapon[,] or ... [u]ses or threatens the immediate use of a dangerous instrument against any person[.]" § 569.020.1.[1] "[A] person 'forcibly steals', and thereby commits robbery, when, in the course of stealing, as defined in section 570.030, he uses or threatens the immediate use of physical force upon another person for the purpose of ... [p]reventing or overcoming resistance to the taking of the property or to the retention thereof *502 immediately after the taking[.]" § 569.010(1). Under section 570.030, "[a] person commits the crime of stealing if he or she appropriates property or services of another with the purpose to deprive him or her thereof, either without his or her consent or by means of deceit or coercion." § 570.030.1. "Appropriate" is defined as "to take, obtain, use, transfer, conceal or retain possession of[.]" § 570.010(2). Exercising control by any of the enumerated acts, with the requisite intent, is a prohibited appropriation. State v. Harris , 364 S.W.3d 790, 794 (Mo. App. W.D. 2012). The distinguishing characteristic between robbery and stealing is that robbery involves the use of force or the threat of force to accomplish the stealing. Kelly , 43 S.W.3d at 349.
"The rule in Missouri has traditionally been that the force, violence or intimidation necessary to prove robbery must precede or be contemporaneous with the taking of the property." Id. at 349. This changed when the criminal code was amended, effective January 1, 1979, to require "forcible stealing" for the crime of robbery. Id. "[T]he force, violence or intimidation can now occur after the taking but it must still be 'in the course of stealing' in that it occurs immediately after the taking in an effort to overcome resistance to retention of the property." Id. "In other words, the force being used immediately after the taking to thwart attempts to prevent retention of the property is part of a whole, single transaction." Id. (citing State v. Yancy , 779 S.W.2d 712, 715 (Mo. App. E.D. 1989) ). In the course of stealing is a broad phrase that covers the whole transaction or occurrence. Yancy , 779 S.W.2d at 715.
In Kelly , the defendant was charged with first-degree robbery and armed criminal action arising out of an incident at a department store. The defendant and another man went into the store and took clothes off the racks. As the men were leaving the store, the store security guard tried to stop them. The defendant dropped his pile of clothes and ran. The security guard ran outside to the defendant's car in an attempt to keep the men from getting away. The defendant pointed a gun in her face. The security guard backed away and the men ran. A jury found the defendant guilty as charged.
On appeal, the defendant argued the evidence was insufficient to support his convictions because it did not establish he used force or a weapon against the security guard while taking property. The defendant claimed the State's evidence only showed that force or a weapon was used after he had dropped the property and no longer had control of it. The defendant argued the evidence only established that by the time he pulled out the gun, the taking was over and he had abandoned his attempt at carrying the clothes away. The defendant asserted the evidence at most showed him to be guilty of stealing. The Kelly court agreed. Id. at 348.
The court found the elements of stealing were met because the defendant appropriated the clothes by taking them out of the building without paying for them, leading to a reasonable inference the defendant intended to deprive the owner of the clothes. Id. But the court found there was no evidence the defendant used force in taking the property. Id. Therefore, the court concluded there was insufficient evidence to convict the defendant of robbery. Id. at 348-49. The court stated:
[T]he record is devoid of any evidence that [the defendant] or his partner used any force or threatened the use thereof at the time of confrontation. Rather, it is clear they dropped the clothes and ran. They used no force nor did they threaten the use of force in order to retain the *503 property. They simply left the clothes and tried to make their escape. At this point, the taking was over, and [the defendant] and his partner had abandoned their attempt to retain the property. The record is clear that, as of that time, no force or threat of force was used.
Id. at 349.
The court explained the "force was used only after the taking was over, and [the defendant] and his partner dropped the clothes and abandoned any attempt to retain possession of them." Id. at 350. The court emphasized that "[t]he use of force did not precede the taking, was not contemporaneous with the taking and was not immediately after the taking for the purpose of overcoming resistance to the retention of the property. " Id. (emphasis in original).
The court also noted that the facts were distinguishable from those in State v. Maynard , 954 S.W.2d 687 (Mo. App. W.D. 1997), and State v. Cates , 854 S.W.2d 17 (Mo. App. W.D. 1993). In Maynard , the defendant stole jeans from J.C. Penney and when confronted in the parking lot by security, he knocked the officer to the ground, ran away, and threw the jeans in the parking lot. In Cates , the defendant stole items from K Mart and when confronted by security, the defendant shoved the officer to the ground and fled before being caught a short time later with the items on his person and underneath a nearby dumpster. The court explained that it affirmed the conviction for robbery in Maynard because the defendant used physical force while the property was still in his possession to overcome resistance to his retention of the property, even though he later disposed of the property while fleeing. Kelly , 43 S.W.3d at 350 n.3 (citing Maynard , 954 S.W.2d at 690 ). Similarly, the court said the robbery conviction in Cates "was affirmed because he used force while still in possession of the stolen property to overcome resistance to his retention of the property, although we phrased it more in terms of him still being in the process of taking the property away." Kelly , 43 S.W.3d at 350 n.3 (citing Cates , 854 S.W.2d at 19 ). The court found the distinguishing characteristic in both cases was "that force was used while the defendant was still in possession of the property and was used for the purpose of overcoming resistance to retention of the stolen property." Kelly , 43 S.W.3d at 350 n.3.
Kelly was distinguished in Hamilton v. State , 300 S.W.3d 538 (Mo. App. S.D. 2009), a post-conviction case. In Hamilton , the movant pled guilty to first-degree robbery. At his plea hearing, the prosecutor argued that if they proceeded to trial the evidence would show the movant walked out of a convenience store with beer he had not paid for; that two employees followed the movant outside to the parking lot and told him to come back inside and pay for the beer; that the movant turned around with a knife in his hand and asked if they wanted to get stabbed; and that the employees did not follow the movant, and he left with the beer. The movant filed for post-conviction relief, claiming there was an insufficient factual basis for his guilty plea, and that the facts recited by the prosecutor did not establish the element of "forcibly steals." Specifically, he argued the prosecutor alleged the movant threatened force only to avoid returning to the store to pay for the property, not that the movant threatened force to retain the stolen property. The motion court denied the movant's contention without an evidentiary hearing, finding the factual basis presented by the State showed the movant forcibly stole the beer because his actions were part of an effort to overcome retention of the property.
*504 On appeal, the movant cited Kelly to support his argument he only threatened force to avoid returning to the store to pay for the beer. 300 S.W.3d at 541. The Hamilton court found Kelly distinguishable because unlike the defendant in Kelly , the movant threatened the use of force to overcome resistance to his retention of the property. Id. The Hamilton court found the facts before it were analogous to the facts addressed in Maynard and Cates , which were both distinguished in Kelly . Id. at 541-42. The Hamilton court stated that the facts in both Maynard and Cates "were that the property taken was in the defendants' possession at the time force was used or threatened to be used." Id. at 542. Similarly, the Hamilton court found the movant had the beer when he threatened the use of physical force, he had not abandoned the property, and he was not merely attempting to escape as in Kelly . Id. The court found the facts presented by the State would support a factual basis for the movant's guilty plea. Id.
Here, we find Kelly to be distinguishable. The facts here are more similar to those in Hamilton , Maynard , and Cates . First, unlike in Kelly , there is evidence in the record that Whittaker used or threatened the use of force "at the time of confrontation" and "immediately after the taking for the purpose of overcoming resistance to the retention of the property. " 43 S.W.3d at 343 (emphasis in original). At trial, Victim testified that when he confronted Whittaker, Whittaker could have left but instead he came at him with a knife and told him to get back or he would cut him. This was sufficient evidence for the trier of fact to reasonably conclude that Whittaker threatened the use of physical force to prevent or overcome resistance to taking the property or to the retention thereof immediately after the taking. § 569.010(1).
Unlike in Kelly , Whittaker did not abandon the stealing of the lawnmower and run when confronted. Kelly , 43 S.W.3d at 349. Rather, when Whittaker was confronted he pulled out a knife, told Victim to get back, and slashed his knife at Victim. Under these circumstances, it was reasonable for the trier of fact to conclude that Whittaker had not abandoned the lawn mower when he pulled a knife. Kelly , 43 S.W.3d at 349. The evidence shows Whittaker did not abandon the robbery until after he was told the police had been called.
Whittaker's action when confronted is similar to the robbers in Hamilton , Maynard , and Cates who threatened the use of force to overcome resistance to the retention of the property. Hamilton , 300 S.W.3d at 541 ; Maynard , 954 S.W.2d at 690 ; Cates , 854 S.W.2d at 19. His actions are most similar to the defendant in Hamilton , who pulled a knife and threatened to stab the employees when he was confronted. Hamilton , 300 S.W.3d at 542. Like the defendant in Hamilton , when Whittaker threatened the use of force, he had not abandoned the property and was not merely attempting to escape. Id.
While one factor the courts in Hamilton , Maynard , and Cates all relied on was that the robbers were in physical possession of the stolen items when the force was used, this is not required: "a person 'forcibly steals,' and thereby commits robbery, when, in the course of stealing , ... he uses or threatens the immediate use of physical force upon another person for the purpose of ... [p]reventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking[.]" See § 569.010(1) (emphasis added). "In the course of stealing" is a broad phrase that covers the whole transaction. Yancy , 779 S.W.2d at 715. It was certainly reasonable for the trial court to conclude Whittaker was still in the course *505 of stealing the lawn mower when Whittaker threatened Victim with a knife immediately after being confronted and that the lawn mower was still within Whittaker's control as he had removed it from the bed of the truck and placed it on the ground.
On Whittaker's argument the State failed to produce sufficient evidence showing he appropriated the lawn mower because it was attached to the truck via a bungee cord, taking the evidence most favorably to the State, the police officer testified he was told by Victim and Victim's girlfriend that Whittaker was pushing the lawnmower away from the truck when Victim approached him. This would allow the trier of fact to reasonably infer a bungee cord was no longer attached to the lawn mower. But even if a bungee cord was attached, the State still produced sufficient evidence showing Whittaker appropriated the lawn mower and he admitted as much at trial, testifying that he took the lawn mower from the truck and placed it on the ground. See State v. Escoe , 78 S.W.3d 170, 174 (Mo. App. W.D. 2002) (noting that crime of robbery is consummated when the robber gains control of the property, even for a moment); State v. Hackney , 750 S.W.2d 621, 622 (Mo. App. E.D. 1988) (finding sufficient evidence to show the defendant exercised complete dominion over victim's purse despite the defendant ultimately leaving purse behind in victim's car as he fled because victim released it to him in the car and the duration of the dominion is immaterial); State v. West , 629 S.W.2d 429, 433 (Mo. App. W.D. 1981) (concluding sufficient evidence was presented to establish the defendant and his accomplice "assumed control over the camper shell by removing it from the place where they found it and this taking, inconsistent with the owner's rights, was an appropriation."). Whittaker's bungee cord argument is too much of a stretch. There is no doubt Whittaker appropriated the lawn mower by removing it from the truck and placing it on the ground, whether a bungee cord was attached to it or not. Point I is denied.
II. Prior and Persistent Offender
In point II, Whittaker contends the trial court made a clerical error by finding him a prior and persistent offender in its judgment because the court never made that finding at trial. Whittaker acknowledges this error does not affect the length of his sentence but requests we remand the case so his written sentence and judgment can be corrected. The State argues this argument was not preserved, and that if reviewed for plain error, Whittaker cannot show a manifest injustice or a miscarriage of justice has resulted therefrom, because as Whittaker admits, it did not affect his sentence. Nonetheless, the State concedes the persistent offender finding is erroneous because the State failed to plead sufficient facts in the indictment demonstrating that status. See § 558.021.
Generally, a mistake on the written judgment and sentence form involving the marking of boxes designated for a defendant's prior and persistent offender findings is considered a clerical mistake. Warren v. State , 429 S.W.3d 480, 481 (Mo. App. E.D. 2014) (citing State v. Gibbs , 306 S.W.3d 178, 183 (Mo. App. E.D. 2010) ). A "prior offender" is one who has pled guilty to or has been found guilty of one felony. § 558.016.2. A "persistent offender" is one who has pled guilty to or has been found guilty of two or more felonies committed at different times. § 558.016.3. These are separate and distinct classifications. The court shall find the defendant a prior and persistent offender if: (1) the indictment pleads all essential facts warranting a finding that the defendant is a prior and persistent offender; (2) evidence is introduced that establishes sufficient facts pleaded to warrant a finding beyond a reasonable doubt that the defendant is a prior and persistent *506 offender; and (3) the court makes findings of fact that warrant a finding beyond a reasonable doubt that the defendant is a prior and persistent offender. § 558.021.1. In a court-tried case, the court may defer the proof and findings of such facts to a later time, but prior to sentencing. § 558.021.3.
The State claims Whittaker's point should be reviewed for plain error only because it was not properly preserved. Whittaker argues the point is properly preserved because the issue only arose after sentencing so it could not be objected to at trial or sentencing. While the indictment charged Whittaker as a prior and persistent offender and it alleged sufficient facts for the trier of fact to find Whittaker a prior offender, it did not allege sufficient facts for Whittaker to be found a persistent offender. At trial, the State presented sufficient evidence for the court to find Whittaker to be a prior and persistent offender, but the court never made those findings. At sentencing, the court did not sentence Whittaker as a prior and persistent offender, but rather sentenced Whittaker within the statutory guidelines to concurrent terms of fifteen years' imprisonment for each count. In its judgment, however, the court found Whittaker a prior and persistent offender. Both parties concede that Whittaker's term of imprisonment will remain the same no matter how we rule.
Under Supreme Court Rule 30.23[2] , "[u]nless justice otherwise requires, the court shall dispose finally of the case." Further, "[i]n the interest of justice, this Court may correct a mistaken classification of offender status without the need to review for plain error." Warren , 429 S.W.3d at 482. Given the lack of compliance with the requirements to find Whittaker a prior and persistent offender and that the court did not sentence Whittaker as a prior and persistent offender, we correct the judgment by deleting the finding that Whittaker was a prior and persistent offender. See id. ; State v. Adams , 350 S.W.3d 864, 868 (Mo. App. E.D. 2011) (finding that when a defendant's sentence is not enhanced by an erroneous finding of persistent offender status, the defendant is not prejudiced, and the court need not review for plain error but rather can correct the judgment by deleting the persistent offender finding). Point II is granted in part.
Conclusion
For the reasons stated above, the judgment and sentence is corrected by deleting the finding that Whittaker is a prior and persistent offender. As so modified, we affirm the judgment.
Lisa P. Page, P.J. and Roy L. Richter, J. concur.

All references to statutes are to RSMo (2016) unless otherwise indicated.

Missouri Supreme Court Rules (2016).